WEEKS LAW FIRM PLLC
2223 E. Speedway Blvd.
Tucson, AZ  85719
Tel 520-318-1209
Fax 520-327-3118
weeks@weekslegal.com
Stephen M. Weeks, SBN 020726
Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Hector Lopez, an individual<br><br>Plaintiff,<br><br>vs.<br><br>COII Bollweg; CO P. Swaney; CO Bennett; CO Van Gundy; CO Zeravica; SGT. Robinson; CO Alonso; CO Caron Grant; COIII G. Suarez; UNKNOWN French; UNKNOWN Gold; UNKNOWN Haynes; UNKNOWN Salas; CO C. Hopper; CO Pinson; WARDEN Ron Credio; DIRECTOR Charles Ryan, in their individual and official capacities,<br><br>Defendants. | **CASE NO.**<br><br>**COMPLAINT**<br>(Civil Rights, Gross Negligence)<br><br>JURY TRIAL DEMANDED<br><br><br><br>**HON.** |

Plaintiff Hector Lopez, by and through undersigned counsel, hereby alleges the following upon information and belief:

**INTRODUCTION**

This action arises out of an incident of botulism poisoning at Arizona State Prison Complex Eyman, SMU I, in July of 2012.  Plaintiff consumed contaminated food and quickly began to exhibit symptoms of poisoning, along with three other

inmates who all consumed the same food. Plaintiff and the other three inmates alerted prison staff to the serious symptoms they were experiencing. Prison staff either ignored Plaintiff entirely or accused him of malingering, consuming contraband, or having sexual intercourse with other prisoners, and repeatedly denied him medical care. After approximately 8 days, Plaintiff was finally taken to the hospital where he was given anti-toxin and his condition began to improve. Plaintiff continues to suffer the effects of the toxin, and asserts that prompt treatment would have prevented the severity of effects that he has experienced.

## PARTIES, JURISDICTION & VENUE

1. Plaintiff Hector Lopez is an individual residing in Pima County, Arizona.

2. In July 2012, Plaintiff was an inmate under the care, custody, and control of the Arizona Department of Corrections (hereinafter "ADC").

3. Plaintiff is not currently in custody.

4. All Defendants were administrators, employees or contractors of the Arizona Department of Corrections at the time of the events complained of herein, and, on information and belief, all reside in Arizona. All Defendants were acting under color of state law at all relevant times herein. Additional details as to each Defendant will be provided as soon as Plaintiff knows them. Plaintiff asserts that if any of the Defendants are married, that all actions taken were on behalf of the respective marital communities.

5. Defendant Ryan is the Director of ADC, and as such has authority to set policy and procedure for all ADC inmates, employees, and contractors.

6. Defendant Credio was the Warden of ASPC Eyman, SMU I at all times relevant to the events described herein.

7. Defendants Bollweg, Sanchez, Suarez, Swaney, Bennett, Zeravica, Robinson, Van Gundy, and Williams observed Plaintiff between July 25 and August 2, 2012, and therefore were on notice, both through Plaintiff's requests for help, as well as obvious signs and symptoms, that Plaintiff was suffering from a severe illness that required immediate treatment.

8. Defendant Swaney coerced Plaintiff into lying about the cause of his illness in order to get proper medical care.

9. Defendants Gold, Haynes, French, Salas, and Does 1-10 were ADC medical staff at the time of the events complained of herein, and failed to properly diagnose Plaintiff's serious medical condition.

10. Defendants Alonso, Suarez, Swaney, Credio, Hopper, Grant, Pinson, and Ryan denied Plaintiff's requests to resolve his issue regarding his medical treatment.

11. The acts and events hereinafter set forth occurred in Arizona.

12. Plaintiff's causes of action are for federal statutory civil rights claims pursuant to 42 U.S.C. § 1983, and thereby give rise to federal question

jurisdiction pursuant to 28 U.S.C. § 1331.  Pendant jurisdiction is further invoked for the state claims, which arise out of the same set of facts, pursuant to 28 U.S.C. § 1367.

**STATEMENT OF FACTS**

13. On or about Friday, July 20, 2012, Plaintiff consumed food that was shared among four inmates: Plaintiff, Thomas Granillo, Enrique Montijo, and Robert Aceves.

14. The food Plaintiff and three other inmates consumed was provided by the Arizona Department of Corrections (hereinafter "ADC"), and was contaminated with botulism.

15. All food consumed by Arizona inmates housed in state prisons is provided by ADC.

16. Food that was contaminated with botulism was given to Plaintiff and other prisoners by ADC.

17. Plaintiff and three other inmates who consumed the food began to feel ill over the weekend of July 21 & 22, 2012.

18. On or about Wednesday, July 25, 2012, Plaintiff complained to, and was observed by COII Bollweg, and taken to the medical unit attached to the prison (hereinafter "medical unit").  On information and belief, Bollweg activated the Incident Command System ("ICS"), indicating a life-threatening emergency.

19. On the same day, Unknown French checked Plaintiff's vital signs and determined that he was not in need of treatment.

20. Defendant medical staff/contractors diagnosed Plaintiff as either having consumed alcohol and/or drugs, or fabricated his symptoms, and he was again returned to his cell.

21. Plaintiff volunteered a urine sample, which, on information and belief, was taken and the results showed no alcohol or drugs in Plaintiff's system.

22. At some point, Plaintiff was seen by Unknown Salas, who denied that Plaintiff needed to go to the hospital, and told Plaintiff, "You shouldn't be doing drugs".

23. On or about July 25, 2012, on information and belief, Mr. Granillo was taken to the hospital where it was discovered that he was suffering from botulism poisoning. On information and belief, Mr. Granillo was placed in intensive care where his heart stopped beating on two separate occasions.

24. On or about July 28, 2012, Plaintiff filled out a Health Needs Request (HNR) despite having difficulty seeing due to the effects of the poison.

25. On the same day, Plaintiff gave his HNR to Unknown Haynes, and was seen by Unknown French, who told Plaintiff that she/he was aware of Plaintiff's issue, and that she was absolutely sure that it was not the same illness that Mr. Granillo had.

26. From July 25 until July 29, 2012, Plaintiff complained to various ADC staff that he needed to go to the hospital and stated that it was an emergency.

27. Between July 25 and August 2, 2012, Plaintiff's condition deteriorated, and included: general weakness, increasing difficulty breathing, chewing, swallowing, eating, walking, writing, and speaking.

28. On or about July 29, 2012, on information and belief, the Incident Command System was activated again, indicating a life-threatening emergency.

29. Plaintiff was again seen by ADC medical staff, and again returned to his cell without treatment.

30. Plaintiff wrote a letter to his family because he believed he was going to die.

31. Plaintiff specifically complained to COs Sanchez, Suarez, Van Gundy, and Williams.

32. CO Williams specifically denied that Plaintiff's illness was caused by food poisoning.

33. On or about July 30, 2012, CO Sanchez asked Plaintiff what was wrong with him before Plaintiff said anything to her. Plaintiff replied, saying he was sick and needed help. On information and belief, Sanchez failed to get help for Plaintiff.

34. On the same day, Plaintiff also complained to CO Suarez. On information and belief, Suarez called medical and was told Plaintiff had already been seen and nothing more would be done. On information and belief, Suarez did nothing

further to help Plaintiff.

35. On or about July 31, 2012, CO Williams spoke to Plaintiff at length at his cell front, accused Plaintiff of lying, and said that Plaintiff would only be helped if he told "the truth", i.e. that the illness was caused by alcohol or drugs.

36. On the same day, CO Williams brought one medical staff person (believed to be Unknown Gold) and CO Bennett to Plaintiff's cell front. On information and belief, the medical staff told Plaintiff that they had already checked Plaintiff's vital signs and found no problems.

37. CO Bennett told Plaintiff that no one wanted to help Plaintiff.

38. On information and belief, Plaintiff was denied access to a licensed physician until immediately before he was taken to the hospital.

39. Between approximately July 25 - August 2, 2012, various correctional officers escorted Plaintiff to the medical unit and back to his cell without treatment. On information and belief, these include CO Zeravica and Sgt. Robinson.

40. When Sgt. Robinson came to the medical unit to escort Plaintiff back to his cell, Plaintiff informed him that he was having extreme difficulty walking, to which Sgt. Robinson responded that Plaintiff must walk or be slammed on the floor and dragged back to his cell. Plaintiff complied to the best of his ability.

41. The next time Plaintiff was taken to the medical unit, a stretcher was

required because Plaintiff was entirely unable to walk. On information and belief, a video recording was made of Plaintiff being removed from his cell on a stretcher.

42. Between approximately July 25 - August 2, 2012, various correctional officers came to Plaintiff's cell front, and accused Plaintiff of getting sick from consuming homemade alcohol (a.k.a. "hooch"), taking "pills" or illegal drugs, or from having sex with other prisoners.

43. CO Swaney told Plaintiff that he would get no help.

44. Plaintiff asked CO Swaney if Plaintiff could speak to a superior officer.

45. On information and belief, CO Swaney responded in the negative, adding "suck my dick", and "shut the f**k up".

46. On or about August 2, 2012, Plaintiff was again taken to medical and was seen by unknown medical staff.

47. On August 2, 2012, CO P. Swaney spoke to Plaintiff at the SMU I medical unit and told him that he would only be taken to the hospital if he admitted to consuming hooch.

48. Plaintiff lied and told CO Swaney that he had consumed hooch because he believed he would die if not taken to the hospital.

49. On the same day, Plaintiff was taken to St. Luke's Hospital where he remained for 7 days undergoing treatment.

50. On August 3, 2012, CO Swaney issued an Inmate Disciplinary Report to Plaintiff for admitting to consuming hooch.

51. On August 15, 2012, Plaintiff sent an informal letter to COIII G. Suarez, complaining about the delays in treatment.

52. Suarez responded that Plaintiff had been treated and that "inmates do not have the right to dictate treatment or who provides treatment."

## COUNT I - Gross Negligence

53. Plaintiff incorporates all previous paragraphs herein by reference.

54. Plaintiff asserts that Defendants, one or more, had a duty to ensure that the food given to ADC inmates is safe to eat.

55. ADC's food was unsafe to eat and contaminated with botulism toxin.

56. All food consumed by ADC inmates is provided by ADC.

57. Therefore, Plaintiff asserts that under the doctrine of *res ipsa loquitur,* ADC must have breached its duty.

58. Plaintiff states that he was injured by contracting botulism poisoning.

59. Plaintiff states that this breach was the actual and proximate cause of his injuries.

60. Defendants were grossly negligent in failing to provide timely treatment for the serious condition.

61. Defendants were grossly negligent in failing to provide uncontaminated

food.

## COUNT II - Deliberate Indifference

62. Plaintiff incorporates all previous paragraphs herein by reference.

63. Defendants are liable under the Eighth and Fourteenth Amendments to the U.S. Constitution for failure to adequately train ADC employees. Specifically, the Defendants have a custom or policy of deliberate indifference in regards to the medical needs of citizens that are in the care, custody, and control of ADC.

64. Defendants' training procedure is not adequate to recognize obvious medical needs of inmates.

65. Defendants were aware that Plaintiff had a serious health problem.

66. Plaintiff alerted Defendants to his health problem via Plaintiff's HNRs, as well as verbal complaints made by Plaintiff directly to various Defendants.

67. Other inmates repeatedly tried to get the Defendants' attention. They screamed, banged on their cell doors, and otherwise asked the officers for assistance for Plaintiff and the other ill inmates.

68. All Defendants who saw Plaintiff or read his HNRs and grievances between July 25 and August 2, 2012 knew or should have known that Plaintiff required urgent medical care.

69. All Defendants who saw Plaintiff or read his HNRs and grievances between July 25 and August 2, 2012 knew or should have known that Plaintiff needed to

see a licensed physician capable of conducting an appropriate differential diagnosis.

70. In accordance with their custom and policy, Defendants ignored Plaintiff and the other inmates' pleas for help.

71. In fact several Defendants called Plaintiff names and accused him of malingering, consuming contraband, and/or having intercourse with other inmates.

72. Plaintiff states that these customs and polices were in violation of the Eighth Amendment right to be free from cruel and unusual punishment. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S. Ct. 285 (1976).

73. As a result of Defendants' deliberate indifference, he suffered from the effects of the toxin longer than necessary, feared for his life, and will continue to suffer physical and emotional effects longer into the future than if he had received proper medical care.

WHEREFORE, Plaintiff prays for relief as follows

1. For actual damages, in an amount to be determined at trial,

2. For compensatory damages, in an amount to be determined at trial,

3. For punitive damages, in an amount to be determined at trial,

4. For attorney's fees and costs, and

5. Awarding such other and further relief as the Court deems just and

proper under the circumstances.

DATED this 22nd day of ____July____, 2013.

WEEKS LAW FIRM PLLC


_s/Stephen M. Weeks_
Stephen M. Weeks, Esq.
Attorneys for Plaintiff