**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hector Lopez, et al., | No. CV-13-00691-TUC-DCB |
| Plaintiffs, | **ORDER** |
| v. | |
| Unknown Bollweg, et al., | |
| Defendants. | |

On February 12, 2020, at the close of the Plaintiff's case in chief, the Defendant moved for judgment as a matter of law. Fed. R. Civ. P. 50(a). The Court granted the motion, ruling from the bench that the Plaintiff failed to present evidence sufficient to support his constitutional claim that Defendants were deliberately indifferent to his serious medical needs and, "even if the evidence would support a verdict in this case on the merits, the Court would dismiss the case on the basis of qualified immunity.

On March 12, 2020, the Plaintiff filed a Rule 59 Motion for New Trial. The Court may grant a new trial "'only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice.'" (Response (Doc. 214) at 2 (quoting *Shimko v. Guenther,* 505 F.3d 987, 993 (9th Cir. 2007)). The Plaintiff argues that there has been a miscarriage of justice because the Court applied an improper standard when it granted the Defendants' Rule 50 motion. The Plaintiff complains that the Court weighed the evidence and made credibility determinations.[1]

---

[1] The Plaintiff did not cite to the trial record; Defendants' Response was the same. The record has not been transcribed. The Court rules based on its trial notes.

"Rule 50 requires a court to render judgment as a matter of law when a party has been fully heard on an issue, and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). The standard for ruling on a Rule 50 motion is the same as for ruling on a motion for summary judgment, as explained by the Supreme Court: the court must review all of the evidence in the record, *id.* (citing e.g., *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), drawing all reasonable inferences in favor of the nonmoving party, and make no credibility determinations or weigh any evidence, *id.* (citing *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–555). The latter functions, along with the drawing of legitimate inferences from any facts, are for the jury, not the court. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, (1986). Although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. *Id.* It may not disregard or discount evidence favorable to the non-moving party. *Id.* at 151.

In this case, qualified immunity was previously denied on summary judgment, therefore, the Court should not consider a Rule 50 motion on qualified immunity unless substantially different evidence was produced at trial. *Dean v. Gage County*, 807 F.3d 931, 936 (8th Cir. 2015); *see also Little Earth of the United Tribes, Inc. v. U.S. Dep't of Hous. & Urban Dev.,* 807 F.2d 1433, 1441 (8th Cir.1986) (discussing appropriateness of reconsidering previously decided issue only if substantially different evidence is subsequently introduced or the decision is clearly erroneous and works manifest injustice).

Defendants, government officials, enjoy qualified immunity from civil damages unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It "shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances confronted. Even if the officer's decision is constitutionally deficient, qualified immunity shields her from suit if her misapprehension about the law applicable to the circumstances was

reasonable." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). The purpose of the doctrine is "to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009). Because it is inevitable that government officials will in some cases make mistakes, *Garcia v. Cty. of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011), qualified immunity "gives ample room for mistaken judgments" and protects "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224 (1991); *see also Ashcroft v. al–Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092 (1986)).

Qualified immunity involves a two-prong assessment: (1) whether the facts show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in the specific context of the case. (Order (Doc. 125) at 18-19 (quoting *Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014) (internal quotation omitted.) Again, the Court reviews the facts "in the light most favorable to the injured party." *Id.* (citation omitted).

Here, the clearly established Eighth Amendment standard that a prisoner must demonstrate is: "deliberate indifference to serious medical needs." (Order (Doc. 125) at 7 (citing *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Deliberate indifference includes both an objective standard and a subjective standard. "First, a prisoner must show a 'serious medical need.'" *Id.* (quoting *Jett*, 439 F.3d at 1096 (citations omitted). A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id.* at 8 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992)). Second, a prisoner must show that the defendant's response was deliberately indifferent, *Jett*, 439 F.3d at 1096, meaning the official knew of and disregarded an excessive risk to the inmate's health or safety; the official must "'both be aware of facts from which the inference could be drawn that a substantial risk of serious

1  harm exists, and he must also draw the inference." *Id.* (quoting *Farmer v. Brennan*, 511
2  U.S. 825, 837 (1994)).

3  As affirmed by the Ninth Circuit Court of Appeals, this Court denied summary
4  judgment based on qualified immunity because there were questions of fact in dispute
5  which needed to be decided by a jury. As to both Defendants, there was some evidence to
6  support Lopez' claim that they knew of his serious medical need but did nothing to help
7  him. "*The denial of medical care in the face of an obvious emergency constitutes deliberate*
8  *indifference."* (Opinion (Doc. 141-1) at 2-3 (citing *Hoptowit v. Ray*, 682 F.2d 1237, 1259
9  (9th Cir. 1982)) (emphasis added).

10  On summary judgment, Plaintiff claimed that "he was unable to walk, eat, open his
11  eyes, chew, talk, or breathe without gasping for air—all clearly observable and severe
12  symptoms." *Id.* at 2. Neither this Court nor the appellate court reached Defendants'
13  assertion that they relied on the opinions of prison medical staff, *Hamby,* 821 F.3d at 1095
14  (non-medical staff are entitled to qualified immunity when they act (or fail to act) in
15  reliance on a "bona fide medical opinion"), because of the dispute over the open and
16  obvious serious emergency conditions allegedly observed by the Defendants. Also, on
17  summary judgment motion, the record did not reflect any bona fide medical opinion . . .—
18  or, at least, not one of which Defendants were aware. The Plaintiff alleged that he told
19  Defendants, especially Bennett, that "nursing staff refused to help or examine him, and he
20  had not seen a doctor. The Court reasoned that in the face of serious symptoms, Defendants
21  could be found deliberately indifferent if they failed to verify that Plaintiff was receiving
22  treatment. *Id.* at 3.

23  At trial, this Court in granting the Defendants' Rule 50 motion considered the whole
24  record but did not weigh or make any credibility determinations. The Court granted
25  judgment for the Defendants based on the only medical evidence offered in the Plaintiff's
26  case in chief, which included the Plaintiff's medical record and the undisputed testimony
27  of Physician's Assistant (PA) Salyer.[2]

---

28  [22] On Summary Judgement, PA Sayler offered a six-page affidavit in support of Defendants' motion. At trial, he testified in the Plaintiff's case in chief for most of day one

At trial, the Plaintiff testified, consistent with his assertions on summary judgment, that he was unable to walk, eat, open his eyes, chew, talk, or breathe without gasping for air. Plaintiff also presented relevant medical records and testimony from PA Sayler, who was the PA at the prison who diagnosed the Plaintiff with botulism. Plaintiff did not dispute the accuracy of any of the medical records, which clearly reflected that the Plaintiff at all times, even on the day he was transported to the hospital, was not in need of emergency life-saving medical treatment. PA Sayler sent Lopez to the hospital via regular prison van transport, not by ambulance, and Lopez did not receive the anti-toxin treatment for botulism at the hospital until two days later. PA Sayler testified to the rarity of the illness, the diversity of the symptoms and degree of severity, ranging from flu-like symptoms to breathing and mobility impairments, and testified that botulism is extremely difficult to diagnose. He testified that his military background had informed him of the illness, but most civilian doctors and certainly the nurses would not recognize the illness. He testified that the medical unit nurses were well trained, highly skilled and experienced. This testimony was undisputed.

The Court does not mean to underestimate the seriousness of Plaintiff's illness, and that it was life-threatening, but the medical record reflected that he was seen every day by nursing staff, who were summoned by Defendants[3] and other correction officers. The medical record and PA Sayler's testimony reflected that the nurses followed prison procedures, by monitoring Plaintiff's vital signs, which at all times were normal, and reported Lopez' medical condition and complaints to prison doctors, who ordered continued monitoring which was provided by nursing staff.

The question on summary judgment was whether the Defendants knew that Lopez was being treated. The answer became clear at trial. It was undisputed that the Defendants knew that Lopez was being seen by nurses, daily and sometimes several times a day. They were not privy to any assessment details, but Defendants knew that the nurses were

---

and part of day two of the three-day trial.
[3] Bennett summoned nursing on July 29-31, and Swaney contacted the medical unit on August 1, 2012, after the man-down incident in Lopez' cellblock.

following Department of Correction (DOC) procedures and protocols for nursing assessments, which included reporting to doctors, who were monitoring the situation. Plaintiff does not challenge this. Plaintiff's argument is that this was not treatment and, Defendants knew he was not being treated by a doctor. To prevail, Lopez must present evidence from which a reasonable jury might conclude the Defendants knew and disregarded that there was an excessive risk to Lopez' health from the ongoing triage medical care being provided by medical unit nurses.

In other words, it was not enough that the Defendants were soliciting medical care, which Defendants knew was rendered according to DOC policy and procedures by nurses who conducted triage assessments and reported to doctors. Plaintiff testified that "he was unable to walk, eat, open his eyes, chew, talk, or breathe without gasping for air—all clearly observable and severe symptoms." *Supra. above.* The Court accepted this description of his condition as true. In granting the Rule 50 motion, the Court rejected Plaintiff's theory of the case. To prevail, the Plaintiff had to present evidence from which a reasonable juror might conclude that there was an obvious medical emergency which would lead a reasonable government official, like either of the Defendants, to conclude that ongoing monitoring by medical unit nurses of his condition posed a high risk of injury to the Plaintiff. This the Plaintiff failed to do because in addition to his testimony of the above symptoms, he also presented testimony that Lopez' vital signs, including breathing, were at all times normal. No one knew that he had botulism because botulism is extremely hard to diagnose. Even on the day that PA Sayler diagnosed botulism, the medical record reflects that the Plaintiff did not require immediate emergency transport to the hospital, and at the hospital, he did not receive the anti-toxin until three days later.

The Court denies the Rule 59 Motion for a New Trial and reaffirms its Rule 50 ruling in favor of Defendants. The Plaintiff failed to present evidence from which any reasonable juror could find that the open and obvious serious medical condition he exhibited would have led reasonable officers, like the Defendants, to believe that the medical care being rendered by the medical unit nurses posed a serious risk to the Plaintiff's

health. As noted above, under clearly established law, non-medical staff may rely on a bona fide medical opinion. Based on undisputed evidence that the nurses were highly trained and well qualified to conduct the triage assessments which were conducted in response to Plaintiff's complaints to the Defendants, the Court finds that the Defendants reasonably relied on bona fide medical opinions from prison medical staff that Plaintiff's condition was being treated by the ongoing monitoring being conducted by the nurses. Defendants are entitled to qualified immunity.

**Accordingly,**

**IT IS ORDERED** that the Rule 59 Motion for New Trial (Doc. 211) is DENIED.

Dated this 28th day of September, 2020.

David C. Bury
United States District Judge